UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SEAN CASEY PATEL,**

    Petitioner,

v.                                                     **Case No. 8:23-cv-2924-TPB-AEP**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    Respondent.
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Sean Casey Patel, a Florida prisoner, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Having considered the petition, Respondent's response in opposition to the petition (Doc. 9), and Patel's reply (Doc. 12), the Court **DENIES** the petition.

## Background

On September 3, 2015, Patel shot Dautara Grayson 14 times with a handgun and killed him. (Doc. 10-1, Ex. 3, at 114-17, 417). The murder took place in the Patel family's living room in Clearwater, Florida. (*Id.* at 204, 500). At the time, Patel was 17 years' old, and Grayson was 38. (*Id.* at 341). Following a jury trial, Patel was convicted of first-degree premeditated murder and sentenced to 40 years' imprisonment. (*Id.*, Exs. 4-5).

The jury heard two conflicting versions of the shooting. Sylvia Littles, a neighbor of the Patels, was in the living room during the incident. (*Id.*, Ex. 3, at 104-05). She testified that Grayson entered the house, sat down in a chair, and started "talking" to Patel's mother. (*Id.* at 107-08, 113). Patel interrupted the conversation by saying to Grayson, "Hey dude, where my money at." (*Id.* at 111). Grayson replied, "[I]f I had your money, I would have [given] it to you." (*Id.* at 113). Patel pulled out a gun and fired at Grayson, who was still sitting down. (*Id.* at 113-14). Grayson got up, said "he shot me," and collapsed near the front door. (*Id.* at 114-16). Two or three minutes later, Patel "noticed [Grayson] was still breathing and . . . shot him in the head." (*Id.* at 116-17).

Patel's younger brother, Anthony Patel, offered a different account of the shooting.[1] He testified that Grayson entered the house and asked Patel's mother if he could "buy" her "medication." (*Id.* at 506-07). She "told him no," and he "started to get aggravated." (*Id.* at 511). Patel and his mother "were trying to get [Grayson] out of the house," but he "wouldn't leave." (*Id.* at 512). Grayson got up and began to approach Patel, who "start[ed] fumbling in his left waistband." (*Id.* at 513). At this point, Grayson "charg[ed]" at Patel. (*Id.* at 560). Patel "got his bearings" and, according to Anthony, fired 14 shots at Grayson in "under three seconds." (*Id.* at 514). On cross-examination,

---

[1] To avoid confusion, the Court refers to Anthony Patel by his first name.

2

however, Anthony was confronted with a prior statement in which he said that Patel shot Grayson in the head *after* Grayson "fell to the ground." (*Id.* at 561, 563-66).

The medical examiner testified that Grayson sustained two gunshot wounds to the head. (*Id.* at 386-88). One entered through the forehead, and the other entered through the back of the head. (*Id.*) He was also shot four times in the back. (*Id.* at 394). The remaining gunshots struck other parts of his body, including his right shoulder, right wrist, and left forearm. (*Id.* at 217-18, 424-28). At the time of the shooting, Grayson stood 6'3" and weighed 264 pounds. (*Id.* at 381). Patel stood 5'9" and weighed 255 pounds. (*Id.* at 333).

After sentencing, Patel unsuccessfully appealed his conviction. (*Id.*, Ex. 9). He then sought postconviction relief under Florida Rule of Criminal Procedure 3.850 and Florida Rule of Appellate Procedure 9.141(d). (*Id.*, Exs. 10, 17). When those efforts failed, Patel filed this federal habeas petition. (*Id.*, Exs. 14, 18, 21; *see also* Doc. 1).

## Standards of Review

**AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of

3

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is

4

objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

In an unexplained decision, the appellate court denied Patel's petition alleging ineffective assistance of appellate counsel. (Doc. 10-1, Ex. 18). That decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002).

**Ineffective Assistance of Counsel**

Patel alleges ineffective assistance of appellate counsel. Ineffective-assistance-of-appellate-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. "Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments." *Overstreet v. Warden*, 811 F.3d 1283, 1287 (11th Cir. 2016). "Generally, only when ignored issues are clearly stronger than those

presented, will the presumption of effective assistance of counsel be overcome." *Id.* (internal quotation marks and citation omitted). Appellate counsel's "performance will be deemed prejudicial if . . . the neglected claim would have a reasonable probability of success on appeal." *Tuomi v. Sec'y, Fla. Dep't of Corr.*, 980 F.3d 787, 795 (11th Cir. 2020) (internal quotation marks and citation omitted).

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## Discussion

Patel raises a single claim for relief: that appellate counsel was ineffective for failing to challenge an alleged error in the jury instruction on

self-defense.[2] (Doc. 2 at 8). "Florida law justifies the use of deadly force if someone 'reasonably believes that using . . . such force is necessary to prevent imminent death or great bodily harm to himself . . . or to prevent the imminent commission of a forcible felony.'" *Jackson v. State*, 253 So. 3d 738, 740 (Fla. 1st DCA 2018) (quoting Fla. Stat. § 776.012(2)). In accord with this framework, the jury was told that Patel could use deadly force "if he reasonably believed that such force was necessary to prevent imminent death or great bodily harm to himself, or the imminent commission of aggravated battery against himself." (Doc. 10-1, Ex. 3, at 660). This instruction fit Patel's theory that the shooting was "self-defense because [Grayson] charged at him." (*Id.* at 711).

Patel argues, however, that the trial court erroneously refused to include burglary as an additional "forcible felony" that justified his use of deadly force. (Doc. 2 at 8-10). During the charge conference, defense counsel argued that Grayson "technically" committed burglary because he "was asked to leave," "remained" in the house, and then charged at Patel. (Doc. 10-1, Ex. 3, at 599-600). The court said, "I don't think that qualifies [as a burglary]. If [Grayson] secreted himself inside the house after being told to leave, maybe. But . . . him staying there [did not constitute a burglary]." (*Id.* at 599). Thus,

---

[2] Patel voluntarily dismissed the other claims in his petition. (Docs. 13, 19-20).

7

the court did not include burglary in the self-defense instruction. Instead, it told the jury that Patel could use deadly force if necessary to prevent "the imminent commission of aggravated battery against himself." (*Id.* at 660).

According to Patel, appellate counsel should have challenged this ruling as a violation of his right to "instruct the jury on his theory of defense." (Doc. 2 at 11-12). Patel argues that he was entitled to the instruction because, under Florida law, Grayson committed a burglary when he refused to leave and then "attempt[ed] to attack [him]." (*Id.* at 10). In Patel's view, no "reasonable appellate attorney would fail to raise" this issue. (*Id.* at 11).

The state appellate court rejected Patel's ineffective-assistance claim without explanation. (Doc. 10-1, Ex. 18). Where, as here, "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. In this situation, "a habeas court must determine what arguments or theories . . . could have supported[ ] the state court's decision." *Id.* at 102. Patel cannot prevail unless the decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Thus, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Hill v. Humphrey*, 662 F.3d 1335, 1346 (11th Cir.

8

2011). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Patel cannot meet his burden. A fairminded jurist could conclude that the "omitted claim" had no "reasonable probability of success on appeal" because the denial of the instruction was harmless. *Joiner v. United States*, 103 F.3d 961, 963 (11th Cir. 1997); *see also Boland v. Sec'y, Dep't of Corr.*, 278 F. App'x 876, 879 (11th Cir. 2008) (prejudice inquiry "requires that we determine whether the state court would have applied harmless error review"). With no reasonable probability of success on appeal, Patel cannot show prejudice from the omission of his claim.

A Florida appellate court "will not reverse where an error is harmless." *Peret v. State*, 301 So. 3d 437, 439 (Fla. 2d DCA 2020). The test for harmlessness is "whether there is a reasonable possibility that the error affected the verdict." *Butler v. State*, 493 So. 2d 451, 453 (Fla. 1986). Applying this rule, Florida courts have long "held that the refusal to give a proper instruction that would have not aided a party is harmless error." *Vila v. State*, 74 So. 3d 1110, 1113 (Fla. 5th DCA 2011) (collecting cases).

Under the facts presented here, a fairminded jurist could certainly conclude that the burglary instruction Patel sought would not have aided him. The defense theory was that the shooting was justified because Grayson "charged at" Patel. (Doc. 10-1, Ex. 3, at 711). The self-defense instruction

9

allowed the jury to acquit if it accepted Patel's theory. Under the instruction, Patel could use deadly force if he "reasonably believed that such force was necessary to prevent imminent death or great bodily harm to himself, or the imminent commission of aggravated battery against himself."[3] (Doc. 10-1, Ex. 3, at 660). The jury rejected Patel's self-defense argument, finding beyond a reasonable doubt that his use of deadly force was not justified. (*Id.* at 664; *see also id.*, Ex. 4).

      Thus, there is no "reasonable possibility" that the outcome would have been different had the court included burglary in the self-defense instruction. *Butler*, 493 So. 2d at 453. According to Patel, the burglary occurred when Grayson "refus[ed] to leave" the house and "charg[ed] at him," prompting him to "shoot Grayson out of fear." (Doc. 2 at 4; Doc. 10-1, Ex. 17, at 12-14). But the jury necessarily rejected that version of events when it found Patel guilty of first-degree premeditated murder. (Doc. 10-1, Ex. 4). As such, Patel fails to show that his proposed instruction would have made a difference to the jury's evaluation of his self-defense argument. Under these facts, a fairminded jurist could certainly conclude that any insufficiency in the self-defense instruction was harmless because the addition of burglary as a forcible felony "would have not aided" Patel. *Vila*, 74 So. 3d at 1113.

---

[3] The jury was told that aggravated battery occurs when a person, in committing a battery, "intentionally or knowingly cause[s] great bodily harm," "permanent disability," or "permanent disfigurement." (Doc. 10-1, Ex. 3, at 664-65).

10

Moreover, Patel's claim of self-defense was extremely weak to say the least. He shot Grayson 14 times—twice in the head, four times in the back, and eight times in other parts of the body. (Doc. 10-1, Ex. 3, at 217-18, 386-88, 394, 424-28). And Littles, the neighbor who witnessed the shooting, testified that two or three minutes after the first round of shots, Patel "noticed [Grayson] was still breathing" on the floor and "shot him in the head." (*Id.* at 116-17). Anthony Patel claimed at trial that his brother fired all 14 shots at Grayson in "under three seconds" as Grayson charged at him. (Id. at 514). But Anthony was impeached with a prior statement in which he said that Patel shot Grayson in the head *after* Grayson "fell to the ground." (*Id.* at 561, 563-66). With this kind of testimony in the record, a fairminded jurist could conclude that any error in the self-defense instruction "was harmless in light of the testimony and the physical evidence presented at trial." *Miller v. State*, 112 So. 3d 753, 753 (Fla. 2d DCA 2013); *see also Santiago v. Sec'y, Dep't of Corr.*, 723 F. App'x 896, 904 (11th Cir. 2018) ("[I]t was not objectively unreasonable for the state [ ] court to conclude that [petitioner] had an extremely weak self-defense theory and that it was not reasonably likely a properly instructed jury would have acquitted [him] on that basis.").

In short, the state appellate court could have concluded that counsel was "not ineffective" for declining to raise an alleged "error [that] was harmless." *Boland*, 278 F. App'x at 880. Because "some fairminded jurists

11

could agree with [that] decision," "federal habeas relief must be denied."[4] *Hill*, 662 F.3d at 1346.

## Conclusion

Accordingly, it is **ORDERED** that Patel's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Patel and to **CLOSE** this case.

It is further **ORDERED** that Patel is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. To obtain a certificate of appealability, Patel must show that reasonable jurists would find debatable both (1) the merits of the underlying claim and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Patel has not made the requisite showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Patel must obtain permission from the Eleventh Circuit to appeal *in forma pauperis*.

---

[4] Patel's memorandum of law could be liberally construed as raising a freestanding due process claim based on the denial of the burglary instruction. (Doc. 2 at 11). Any such claim fails for the reasons discussed above—Patel cannot show "more than a reasonable possibility that the [alleged] error contributed to the conviction." *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1114 (11th Cir. 2012).

**DONE and ORDERED** in Tampa, Florida, this 14th day of October, 2025.

_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**